```
              IN THE UNITED STATES DISTRICT COURT
            FOR THE NORTHERN DISTRICT OF ILLINOIS
                        EASTERN DIVISION

UNITED STATES OF AMERICA,       )
                                )
                 Plaintiff,     )
                                )
    v.                          )       No.  08 CR 207
                                )
ANDRE LINEAR,                   )
                                )
                 Defendant.     )
```

SUPPLEMENT TO MEMORANDUM OPINION AND ORDER

This Court waited for three working days after what it considered the October 3 due date that it had set for the government's supplemental submission (if it chose to file one) before this Court issued its October 8 memorandum opinion and order ("Opinion") granting the motion to suppress filed by counsel for defendant Andre Linear ("Linear"), pursuant to which an evidentiary hearing had been conducted on September 8.[1] But on October 10 this Court learned from the Clerk's Office that government counsel had indeed filed a submission on the same October 8 date that this Court had issued the Opinion, with that government filing unfortunately having listed the wrong case number and with government counsel apparently not having complied with this District Court's rule requiring the delivery of a hard

---

[1] As Opinion at 2 stated, at the conclusion of the hearing "this Court granted counsel for the litigants a period of 14 days after their receipt of the hearing transcript within which they might wish to supplement their prehearing submissions." Hence the delivery of the transcript to government counsel on September 19 placed October 3 on this Court's calendar as the government's due date.

copy of any electronically-filed document to judicial chambers.
It also turned out that Linear's counsel, who had not picked up his copy of the hearing transcript for several days after it was made available on September 19, apparently regarded that as the triggering date for his 14-day leeway for filing and therefore tendered his own posthearing memorandum on October 9.[2]

As for the government's position, it advances the en banc decision in United States v. Childs, 277 F.3d 947 (7th Cir. 2002)--the same case it had cited in its prehearing memorandum--for this proposition:

> Traffic stops supported by probable cause are arrests, not Terry stops, and a person stopped on probable cause may be searched fully.

But Opinion at 11-12 has already explained why Childs really calls for the rejection rather than the acceptance of the government's posture in this case. Although there is no need to repeat everything that was said in the Opinion, including its quotation of the relevant language from Childs, 277 F.3d at 952, a couple of brief observations may be in order.

First, Trooper Wilhelmy did **not** have probable cause for

---

[2] It may well be that government counsel, because this Court had requested simultaneous posthearing submissions, viewed that extended date as applicable to his submission as well as that tendered by Linear's counsel. No matter, for all of this is simply by way of a background explanation of the Opinion's issuance based on this Court's belief that neither party had decided to provide any added input. This supplement will nonetheless go on to speak to the later-delivered submissions.

2

stopping Linear.  This Court, having considered all of the evidence, has found Wilhelmy's account of events to be totally lacking in credibility--the asserted absence of a light illuminating the rear license plate was frankly bogus,[3] and as for the more serious asserted violation purportedly involving improper lane usage, under the real circumstances that this Court gleaned from the hearing Wilhelmy lacked even a reasonable suspicion to support his stopping Linear (as the Opinion held, Linear's lane changes were caused by Wilhelmy's own driving and by a proper desire on Linear's part to avoid a consequent traffic accident), let alone lacking probable cause.

It is of course unsurprising that the government proceeds on the prosecutor's premise that Wilhelmy's testimony was truthful--a premise that this Court, as the independent objective trier of fact, has rejected.  But what is not to be expected is

---

[3] Linear's posthearing memorandum has cited Judge Posner's opinion in United States v. Broomfield, 417 F.3d 654, 655 (7th Cir. 2005) for its skepticism about officer testimony regarding "furtive" actions by persons whom they have accosted--a statement directly applicable to Wilhelmy's like characterization here. That type of over-the-top testimony is regrettably not confined to purported furtiveness--this Court recalls the Chicago police officer who used to be assigned to the DEA for airport stops and who used to shape his testimony so that a disembarking passenger who (or whose luggage) was later searched for the presence of drugs was said to fit the "drug courier profile" whether the passenger left the aircraft earlier than most other passengers, later than most other passengers or somewhere in the middle. Unfortunately Wilhelmy's testimony in this case did not ring true in a number of respects, including those referred to in this paragraph of the text.

the government's "probable cause" assertion that Wilhelmy himself never made.  Whatever else may be said about him, there is no question that he knows all of the formulaic buttons to push in support of fitting the "facts" to his understanding of what the law requires.  In that respect there is no need to repeat once again the several references in the Opinion to Wilhelmy's formulaic testimony in an attempted justification of his actions.  But it is noteworthy that with that knowledge, his only reference to the presence or absence of probable cause came in his disclaimer at Tr. 79:5-10:

> Q.  Well, in terms of some offense, he changed lanes?
>
> A.  Improper lane usage, yes.  That's why I -- one of the reasons why I stopped him.
>
> Q.  All right.  And up to the time you conducted the pat down you don't have any evidence of anything else, do you?
>
> A.  Evidence?  Probable cause no[.  R]easonable suspicion, yes.[4]

It is also worth noting that Wilhelmy, who (as already said) was certainly knowledgeable in the lingo of law enforcement, made a distinction throughout his testimony (Tr. 40:17-20 and 72:9 through 73:14) of the difference between what he considered as

---

[4] [Footnote by this Court]  Those brackets at line 10 correct a typographical error in the preparation of the transcript.  Both this Court's recollection and--more importantly--its notes during the hearing confirm that what Wilhelmy actually said is accurately reflected in the version with the brackets.

traffic "stops," numbering some 10,000, and what he considered as "arrests," which he estimated at the 1,000 level stemming from those stops. That too illuminates his distinction between "probable cause" (which he has acknowledged he lacked) and "reasonable suspicion"--though the circumstances revealed at the hearing negated even the latter.

Although the Opinion's references to Wilhelmy's general lack of credibility really require no further amplification, Linear's posthearing memorandum at 7 has identified some added respects in which Wilhelmy's testimony was at odds with that of Trooper Hofbauer. Viewed independently, those disparities are of course minor, but they tend to confirm the picture of Wilhelmy reshaping events in a manner that he believed would support his conduct, rather than simply adhering to the facts and letting the chips fall where they may (as any good witness should).

One final point remains to be addressed--the government's position, advanced at the end of its posthearing submission, that Linear's disclaimer of ownership or possession of the gun deprives him of the right to advance a Fourth Amendment claim. To that end it has cited United States v. Lauchli, 724 F.2d 1279, 1281 n.1 (7th Cir. 1984):

> The defendant does not deny his conversation with the deputy, but at oral argument the defendant advised the court that his wife owned both the gun and the boat. Those factual assertions by the defendant raise some doubt about his standing to object to the search, although the government did not raise the issue. See

5

>   United States v. Salvucci, 448 U.S. 83, 100 S.Ct. 2547, 65 L.Ed.2d 619 (1980).

But that is really a red herring, for Salvucci itself simply rejected a kind of vicarious "automatic standing" to challenge the legality of a search, reconfirming (448 U.S. at 85 (emphasis added)):

>   Today we hold that defendants charged with crimes of possession may only claim the benefits of the exclusionary rule <u>if their own Fourth Amendment rights have in fact been violated</u>.

It is of course fundamental that an individual such as Linear has a "legitimate expectation of privacy" <u>in his own person</u>, prohibiting Wilhelmy's search of Linear's person under the circumstances found by this Court (indeed, Salvucci, id. at 95 itself ordered a "remand so that respondents will have an opportunity to demonstrate, if they can, that their own Fourth Amendment rights were violated"). So neither Salvucci nor Lauchli even suggests that Linear lacked standing to litigate his suppression motion.

Again the government has come up empty in each of its arguments. This supplement accordingly reconfirms this Court's grant of Linear's motion to suppress.

_____
Milton I. Shadur
Senior United States District Judge

Date: